IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

THERESA CLAYTON, individually,
and as Administratrix Ad
Prosequendum of the Estate of
Steven Clayton, deceased,

             Plaintiff,

    v.

UNITED STATES OF AMERICA, ET
AL.,

             Defendants.

Civil Action
No. 10-3127 (JBS/KMW)


**OPINION**

APPEARANCES:

Jason A. Daria, Esq.
John M Dodig, Esq.
FELDMAN, SHEPARD,
WOHLEGELERTNER & TANNER
1845 Walnut Street
25th Floor
Philadelphia, PA 19103
    Counsel for Plaintiff

Paul J. Fishman, United States
Attorney
    By: Paul A. Blaine,
    Assistant U.S. Attorney
OFFICE OF THE UNITED STATES
ATTORNEY
Camden Federal Bldg. & U.S.
Courthouse
401 Market Street
4th Floor
Camden, NJ 08101
    Counsel for Defendant
    United States of America

Nicholas J. Sansone, Esq.
NAULTY, SCARICAMAZZA &
MCDEVITT, LLC
Greentree Commons
9003-a Lincoln Drive West
Marlton, NJ 08053
    Counsel for Defendant
    NorthStar Technology
    Corporation

Dana Charles Argeris, Esq.
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
220 Lake Drive East
Suite 300
Cherry Hill, NJ 08002
    Counsel for Defendant
    Eastern Construction &
    Electric, Inc.

Stephen A. Rudolph, Esq.
MONTE & RUDOLPH, PA
800 the Plaza
Po Box 255
Sea Girt, NJ 08750
    Counsel for Meridian
    Management Corporation

**SIMANDLE**, Chief Judge:

## I.    INTRODUCTION

This case involves the tragic death of Steven Clayton, who was working at the Fort Hamilton military facility in Brooklyn, New York.  Theresa Clayton, as the wife of the deceased and administrator of his estate, seeks compensation from the United States, NorthStar Technology Corporation, Eastern Construction & Electric, Inc., and Meridian Management Corporation for their respective roles in the accident.  Defendants NorthStar and Eastern have moved for partial summary judgment on the question of whether Clayton was acting as an employee for one or both entities under the relevant workers' compensation laws.  [Docket Items 31 & 32.]  A finding that Clayton was an employee may provide a defense to Plaintiff's claims because the relevant statutes foreclose employer tort liability for most workplace accidents.  See N.J. Stat. Ann. § 34:15-8; N.Y. Workers' Comp. Law § 11.  Eastern's motion is unopposed, and there is good cause to grant it.[1]  Therefore, the principal issue on these motions is whether the undisputed facts show that Clayton was an employee of NorthStar.  As explained in today's Opinion, NorthStar is not entitled to partial summary judgment on that issue.

---

[1]  NorthStar did file a "Response," contesting some facts relevant to NorthStar's status as an employer, which the Court has duly considered in preparing today's Opinion and Order.

## II.   BACKGROUND

On June 21, 2008, an accident on a project to replace electrical power poles caused the electrocution death of Steven Clayton.  Two companies with whom Clayton was involved in the project – NorthStar Technology Corporation and Eastern Construction & Electric, Inc. – both claim him as an employee. It is undisputed that Clayton was an employee of the subcontractor, Eastern, but less clear whether Clayton was also an employee of the prime contractor, NorthStar.

In 2006, NorthStar entered into a service contract with the United States Government.  Pursuant to the contract, the Government ordered the replacement of a number of electrical power poles at the Fort Hamilton military facility in Brooklyn, New York.  NorthStar's employees had no ability to perform electrical work, so on November 30, 2007, NorthStar subcontracted with Eastern to have Eastern replace the poles.  Pl.'s Ex. D ("Subcontract Agreement").

The individuals employed by Eastern for the project in many ways had an ordinary independent contractor relationship with NorthStar.  Eastern selected the workers who would be assigned to the project from the ranks of its employees.  Clayton was assigned to supervise the project, and he was joined by another electrician, John Deitz, and a laborer, Charles Miller.  No other personnel were regularly present at the project.  The Subcontract

3

Agreement states that "This Subcontract shall not constitute a joint venture, partnership or other form of business arrangement and each party shall act as an independent contractor without authority to bind the other party."  Id. at 4.

NorthStar, as the prime contractor, ensured that the end results of the work were achieved to the satisfaction of its client, the federal government.  Eastern was responsible for controlling the worksite and actually directing the manner of the work being performed, including overseeing Clayton.  Bolanos Dep. at 46:5-47:20, 229:10-230:21; Silverthorne Dep. at 54:1-21.[2]  No one at NorthStar gave any of the workers instruction, direction, or supervision.  If there was a some problem related to the quality of the work being done, such issues would be handled by Eastern.  Silverthorne Dep. 134:19-23.  Eastern paid for the travel and lodging expenses of the workers and for the trailer on the jobsite.  Eastern also provided all of the materials and equipment used.

In the wake of the accident, NorthStar disclaimed any responsibility as an employer.  Sharon McLaughlin, attorney for NorthStar, wrote to the Occupational Safety and Health

---

[2] The Subcontract Agreement apparently empowered Narendra Mohan, the Proposal Manager and Business Manager of NorthStar who has no electrical expertise, to "exercise technical direction of the Project on behalf of" NorthStar, Pl.'s Ex. D at 3.  But it is unclear exactly what is meant by this and NorthStar does not point to this provision as empowering control over Clayton's work.

Administration that: "NorthStar is not the employer in this case, and does not have control over the jobsite at Fort Hamilton." Pl.'s Ex. F.  McLaughlin prepared affidavits from Norendra Mohan, the Proposal Manager and Business Manager of NorthStar, and Frances Chiang, President and CEO of NorthStar, swearing that NorthStar had no involvement with the project beyond paying the labor costs directly to the subcontractors.  Def. Eastern's Ex. M ¶¶ 8-12 & Ex. N ¶¶ 7-10 ("NorthStar's only involvement in the project was covering the labor costs, as specified in the contract with Eastern . . . All direction of the employees came from Luis Bolanos, the president of Eastern.").

Nevertheless, Clayton's arrangement with NorthStar has some indicia of an employment relationship.  Principally, although the reason for the agreement is disputed, NorthStar and Eastern agreed that NorthStar would pay Eastern's workers directly.[3] NorthStar sent Clayton's checks to Eastern's office and Eastern personnel then distributed the checks to Clayton.[4]  Clayton completed a NorthStar Application for Employment and a Form W-4

---

[3]  Luis Bolanos, President of Eastern, testified that this arrangement was made to make it appear that NorthStar was satisfying its requirement to directly employ a certain percentage of workers, Bolanos Dep. 151:10-23, while NorthStar claims that this was done for the convenience of the workers.

[4] Clayton and his colleagues were paid according to the federal law for personnel working on these types of projects, and NorthStar instructed the employees on how to accurately document and submit their time sheets.

for NorthStar.  He certified to NorthStar's Human Resource department that he was not subject to an income withholding Court Order requiring NorthStar to withhold wages for the payment of child support, was in NorthStar's accounting system as an employee, and was sent other employee-related paperwork, including a W-9 Form.

NorthStar may also have had the power to terminate Clayton, though it is unclear.  Nothing in the subcontract specifies this power.  Frances Chiang, President and CEO of NorthStar testified that NorthStar had the ability to terminate Clayton if he was not doing the job correctly, and Silverthorne made similar comments. Chiang Dep. at 146:4-18; Silverthorne Dep. at 55:10-20.  But Chiang went on to qualify that statement by stating that NorthStar had the ability to demand that Eastern provide another worker to fill the role.  Chiang Dep. at 146:4-18.

Plaintiff filed suit in this Court claiming among other things that NorthStar and Eastern are liable for negligence, reckless and intentional conduct, and wrongful death.  On these motions for partial summary judgment, Defendants NorthStar and Eastern move for summary judgment that Steven Clayton was their employee under the applicable worker compensation statutes of New York and New Jersey.  See N.J. Stat. Ann. § 34:15-8; N.Y. Workers' Comp. Law § 11.  Plaintiff does not oppose Eastern's motion, but opposes NorthStar's motion, arguing that Clayton was

only a contractor for NorthStar, not an employee.

## III. DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A
fact is "material" only if it might affect the outcome of the
suit under the applicable rule of law.  Id.  Disputes over
irrelevant or unnecessary facts will not preclude a grant of
summary judgment.  Id.  The Court will view any evidence in favor
of the nonmoving party and extend any reasonable favorable
inferences to be drawn from that evidence to that party.  Hunt v.
Cromartie, 526 U.S. 541, 552 (1999).  See also Scott v. Harris,
550 U.S. 372, 378 (2007) (The district court must "view the facts
and draw reasonable inferences in the light most favorable to the
party opposing the summary judgment motion.").


### B.  Analysis

Clayton was a New Jersey resident and Eastern is a New
Jersey-based employer, but the accident occurred in Brooklyn, New
York.  These facts have the potential to create a choice-of-law

problem if Plaintiff were empowered to pursue relief under the
statute of her choosing and in the event that the statutes
treated Steven Clayton's employment status differently.  But on
this motion, for the following reasons, the Court finds that
NorthStar is not entitled to summary judgment on these facts with
respect to either statute's coverage of Clayton, so no further
choice of law analysis is necessary.[5]

      1.  <u>New Jersey</u>

The parties focus their briefing on New Jersey law as the
broader of the two statutes with respect to who is considered an
employee.  New Jersey courts "apply an extremely liberal
interpretation to fact situations in order to effectuate the
purpose of the Workmen's Compensation Act to protect workers for
injuries arising out of their employment."  <u>Rutherford v. Modern
Transp. Co.</u>, 320 A.2d 522, 525 (N.J. Sup. Ct. L. Div. 1974).
This liberal construction is applied "not only when the injured
person seeks its protection, but when he attempts to have himself
excluded from the coverage of the act."  <u>Sloan v. Luyand</u>o, 701
A.2d 1275, 1279 (N.J. Sup. Ct. App. Div. 1997).  The

--------

[5]  The Court finds good cause to award partial summary
judgment to Eastern, because it is undisputed that Plaintiff was
an employee of Eastern under both New Jersey and New York law.
Eastern controlled and supervised Clayton, had the power to hire
and terminate him, provided the equipment for his work, and
otherwise acted as Clayton's general employer.

determination that an individual is an employee is based on the circumstances, not the description given to the relationship by the parties.  See Rutherford, 320 A.2d at 526-27; Brower v. Rossmy, 164 A.2d 754, 759 (N.J. Sup. Ct. App. Div. 1960).

That Clayton was an employee of Eastern does not mean Clayton was not also an employee of NorthStar.  Under New Jersey law, "an employee may have two employers for purposes of the worker's compensation scheme - a primary employer and a 'special' employer."  See Roma v. United States, 344 F.3d 352, 364 (3d Cir. 2003) (citing Blessing v. T. Shriver & Co., 228 A.2d 711, 713 (N.J. Sup. Ct. App. Div. 1967)).

To determine whether a worker is a special employee of a company, New Jersey courts apply a multi-prong test, including whether: (1) the employee has made a contract of hire, express or implied, with the special employer; (2) the work being done is essentially that of the special employer; (3) the special employer has the right to control the details of the work; (4) the special employer pays the employees wages; and (5) the special employer has the power to hire, discharge or recall the employee.  See Blessing, 228 A.2d at 713.  Though some authority considers the factors equally important, the New Jersey Supreme Court has subsequently emphasized the first three prongs in the special employment context, and declared that the third is the most important.  Roma, 344 F.3d at 364-365 (citing Volb v. G.E.

Capital Corp., 651 A.2d 1002, 1005 (N.J. 1995).

On the first factor, whether Clayton had a contract of hire with NorthStar, the evidence is mixed.  NorthStar does not identify any written contract hiring Clayton and setting forth the terms of his employment.  It is undisputed that Clayton was selected to perform the subcontracted work by Eastern, not NorthStar.  Clayton did fill out an application for employment with NorthStar.  Def.'s Ex. R.  But under the circumstances, including the other paperwork apparently incident to the parties' peculiar payroll arrangement, multiple reasonable inferences could be drawn from that document about whether NorthStar intended to and did in fact contract to hire Clayton as an employee.

The undisputed facts do not amount to an implied contract either.  In the case relied upon by NorthStar, a worker was hired out to other companies under terms of employment set by those companies, the worker could refuse the job without any consequences, and the worker accepted the contract by proceeding under the company's direction and control.  See Antheunisse v. Tiffany & Co., Inc., 551 A.2d 1006, 1008 (N.J. Sup. Ct. App. Div. 1988).  None of those factors is established as beyond factual dispute on this motion, and indeed the contrary appears to be true: there is no evidence that NorthStar set the terms of Clayton's employment; it appears unlikely that Clayton could

10

refuse Eastern's decision to use him at the project without
consequences for his employment with Eastern; and NorthStar never
exercised any direction or control.[6]

On the second factor, whether the work being done is
essentially that of the special employer, NorthStar contends that
since the work was ultimately done to complete NorthStar's
obligations to the federal government under the prime contract,
the second factor is satisfied.  But this mistaken view of the
law would suggest that all subcontractors are employees.
Generally, "[i]f the servant is expected only to give results
called for by the temporary employer and to use the
instrumentality as the servant would expect his general employer
would desire, the original service continues." Murin v. Frapaul
Construction Co., 573 A.2d 989, 993 (N.J. Sup. Ct. App. Div.
1990).  "[A]bsent evidence to the contrary, there is an inference
that the employee remains in his general employment so long as,
by the service rendered another, he is performing the business
entrusted to him by the general employer." Id.; see also
Antheunisse, 551 A.2d at 1008 (finding that worker was employee

---

[6]   In its reply brief, NorthStar contends that Clayton
manifested assent to an implied hiring contract by complying with
the directions set forth in the Statement of Work.  But the
Statement of Work is part of the Subcontract Agreement, and
contains three sentences directing the subcontractor to "do all
that is necessary or incidental to the accomplishment of
satisfactory and timely performance of this Subcontract."  Pl.'s
Ex. D.  This is not the kind of submission to direction and
control discussed in the precedent.

of temporary employer when the duties were "definitely part of [the temporary employer's] regular business," rather than the work typically performed by the temporary agency).

The fact that NorthStar does not perform electrical work, but Eastern does regularly perform electrical work, further cuts against the notion that the work in this case is properly characterized as work typically performed by the temporary agency, or is something other than the work Clayton was hired by Eastern to do. See Brogna v. United States, CIV. 05-4839 GEB, 2007 WL 2572377, at *7 (D.N.J. Sept. 4, 2007) ("Defendant has offered no evidence showing that it is engaged in the business of shipping freight, whether ammunition or other materials, and therefore fails to satisfy the second factor.").

The third and most important factor, control, weighs heavily against finding an employment relationship in this case.  Beyond conclusory labels of Clayton as working for NorthStar, there is no evidence in the record that NorthStar retained the right to control or direct Clayton's work.  Retaining the right to control the end result of the project is not sufficient; what is required is the right to direct control over the manner of work.  Compare Murin, 573 A.2d at 994 ("The right to control the end result is distinguished from the method of arriving at it, and falls short of showing employment") with Kelly v. Geriatric and Med. Servs., Inc., 671 A.2d 631, 636 (N.J. Sup. Ct. App. Div. 1996) (holding

12

that defendant hospital had the right to control the plaintiff
because "her work duties and job performances were assigned,
directed and overseen by [the defendant], the defendant had "day
to day control" of the plaintiff, and the defendant had the
"right to direct the on-site work assignments").

NorthStar explicitly disclaimed being the employer or having
any control over the jobsite.  See Pl.'s Ex. F (McLaughlin Letter
to OSHA); Def. Eastern's Ex. M ¶¶ 8-12 & Ex. N ¶¶ 7-10
("NorthStar's only involvement in the project was covering the
labor costs, as specified in the contract with Eastern . . . All
direction of the employees came from Luis Bolanos, the president
of Eastern.").  NorthStar attempts to explain the McLaughlin
letter and accompanying affidavits by citing Chiang's subsequent
explanation of her affidavit in which she explains that she was
using "employer" in a sense unique to OSHA, but both the letter
itself and Chiang's testimony make clear that each was using the
word in the sense of control over the worker and direction of the
work.  Chiang Dep. at 149:10-20.

Although NorthStar relies on the testimony of David
Silverthorne, NorthStar's Contract Administrator, to demonstrate
control, that testimony is far from clear as to NorthStar's role.
Silverthorne testifies that any problem with the quality of
Clayton's work would be taken up with Eastern, but that "if it
was something that was – should be handled as an employer, then I

would take that directly to Mr. Clayton, as our employee," and
that "If there was an issue with Mr. Clayton in regard to
something that needed to be employer/employee, if I terminated
Mr. Clayton, then we would go back to Eastern to replace, because
we would utilize his knowledge to ensure that we replaced and/or
he put an Eastern employee on that project."  Silverthorne Dep.
134:23-135:18.  Silverthorne never specifies the kind of issue
that Silverthorne would consider within NorthStar's purview, but
he seems to exclude issues related to the actual performance of
the work.  Beyond the fact that Silverthorne labels the
relationship as employer-employee, this testimony offers little
insight into NorthStar's right to control or direct Clayton's
work.

The fourth factor, regarding NorthStar's payment of
Clayton's wages along with the various indicia of employment
related to wages (W-4 forms, disclaiming of child support
liability, etc.), is both less probative generally than the other
factors and less probative in this particular case because of the
nature of the payroll arrangement.  In this case, there is
evidence that the payroll arrangement was made not as incident to
a normal employment relationship, but because NorthStar was
either attempting to satisfy a federal requirement or attempting
to satisfy Eastern's desire for convenience and speed of
payments.  In either case, the manner of payment is not

especially probative with respect to whether NorthStar was acting as Clayton's employer for the purpose of the workers' compensation statute.  See Santos v. Standard Havens, Inc., 541 A.2d 708, 712 (1988) ("[T]he element of who pays the employee shrinks into comparative insignificance in lent-employee problems, because the net result is almost invariably that the special employer ultimately pays for the services received and the employee ultimately gets his wages.") (quoting Larson, Workmen's Compensation Law § 48.30 (1986); cf. Rutherford, 320 A.2d at 525 (noting that "legal formalities" such as "taxes, reports, etc." are of no great significance).

Finally, as to NorthStar's power to hire, discharge or recall Clayton, the reasonable inferences to be drawn from the evidence are conflicting.  There is no evidence that NorthStar had the power to select Clayton for the job.  And NorthStar's power to terminate Clayton independently from its role in ensuring that the subcontracting work is achieving the proper end result is unclear; it rests on two NorthStar employees' somewhat vague testimony that NorthStar had the power to fire Clayton if the work was done improperly, with one of those employees characterizing this power as NorthStar having the ability to demand that Eastern provide another worker to fill the role. Chiang Dep. at 146:4-18; Silverthorne Dep. at 55:10-20.

In sum, the most important factor in the determination of an

employment relationship is the right to control the manner of
work, and there is no evidence that NorthStar had this right.
The other factors are either disputed, contain mixed evidence, or
are otherwise not sufficiently probative to warrant summary
judgment on this issue in light of the evidence on the control
factor.  Despite New Jersey's very broad definition of an
employee, NorthStar has not demonstrated that the undisputed
facts entitled NorthStar to summary judgment as to Clayton's
employee status under New Jersey law.

      2.  <u>New York</u>

The Court reaches the same result when applying New York
law.  New York courts consider essentially the same factors as
New Jersey courts.  <u>See</u> <u>Cipollone v. Aramark Healthcare Support
Services, LLC</u>, 10 CV 175 RML, 2012 WL 683578 (E.D.N.Y. Mar. 2,
2012) (holding that assessment of employment relationship
includes who controls and directs the manner, details, and
ultimate result of the employee's work; who is responsible for
the payment of wages and the furnishing of equipment; who has the
right to discharge the employee; and whether the work being
performed was in furtherance of the special employer's or the
general employer's business) (citations omitted).

NorthStar is even more clearly not entitled to summary
judgment under New York law because of that state's emphasis on
both the special employer's control over the manner of work and

the general employer's surrender of control.  Under New York law, "General employment is presumed to continue . . . except upon a clear demonstration of surrender of control by the general employer and assumption of control by the special employer." Thompson v. Grumman Aerospace Corp., 585 N.E.2d 355, 357 (1991). "Only where the defendant is able to demonstrate conclusively that it has assumed exclusive control over 'the manner, details and ultimate result of the employee's work' is summary adjudication of special employment status and consequent dismissal of an action proper." Bellamy v. Columbia Univ., 851 N.Y.S.2d 406, 408 (N.Y. Sup. Ct. App. Div. 2008). See also Montalbano v. Kurt Weiss Florist, Inc., 767 N.Y.S.2d 113 (N.Y. Sup. Ct. App. Div. 2003); Jaynes v. County of Chemung, 707 N.Y.S.2d 516 (N.Y. Sup. Ct. App. Div. 2000).  NorthStar has neither demonstrated that it had the right to exercise such control, nor that Eastern surrendered it.

## IV.  CONCLUSION

    NorthStar is not entitled to partial summary judgment that Steven Clayton was NorthStar's employee because NorthStar has not shown that the undisputed facts demonstrate that NorthStar had the right to control or direct the decedent's work, and the other evidence of an employment relationship is also either disputed or insufficient to overcome that critical flaw.  NorthStar's motion

will therefore be denied.  Conversely, Eastern is entitled to partial summary judgment as to the decedent being Eastern's employee.  Clayton's status as Eastern's employee is rightly undisputed, given that Eastern controlled and supervised Clayton, had the power to hire and terminate him, provided the equipment for his work, and otherwise acted as Clayton's general employer. Finally, although the consequence of granting Eastern's motion may ultimately be the dismissal of claims against Eastern, such consequences are not the subject of today's motion.  As there are potentially exceptions to the relevant exclusive remedy provisions, the Court makes no holding regarding the consequences of this decision for partial summary judgment beyond the holding that the decedent was an employee of Eastern.  The accompanying Order will be entered.


**May 16, 2012**       **s/ Jerome B. Simandle**
Date              JEROME B. SIMANDLE
                Chief U.S. District Judge